# Illinois Official Reports

## Appellate Court

---

**People v. Miller, 2014 IL App (2d) 120873**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RHONDA MILLER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0873 |
| Filed | May 1, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for unlawful possession of a controlled substance and drug paraphernalia, the appellate court held that defendant's motion to quash her arrest and suppress the evidence seized following the *Terry* stop of the car in which she was a passenger was properly denied where the detailed information provided to the police by the driver of the car concerning defendant's possession of crack cocaine and a pipe justified the stop, but defendant's sentence to probation for unlawful possession of a controlled substance was vacated and the cause was remanded for a new sentencing hearing on the ground that the trial court abused its discretion in refusing to consider first-offender probation. |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 11-CF-246; the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |

Counsel on
Appeal

Thomas A. Lilien and Christopher McCoy, both of State Appellate Defender's Office, of Elgin, for appellant.

John H. Vogt, State's Attorney, of Freeport (Lawrence M. Bauer and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant, Rhonda Miller, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2010)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2010)). After refusing to place defendant on first-offender probation (see 720 ILCS 570/410 (West 2010)) and failing to address her eligibility for Treatment Alternatives for Safe Communities (TASC) probation, the court sentenced defendant to, among other things, 24 months of probation for unlawful possession of a controlled substance and 1 year of conditional discharge for unlawful possession of drug paraphernalia. Prior to trial, defendant had filed a motion to quash her arrest and suppress the evidence seized, arguing that the arresting officer lacked a proper basis to stop the car in which she was a passenger. The court denied that motion. On appeal, defendant contends that (1) the motion to quash and suppress should have been granted; (2) the court improperly refused to consider first-offender probation at her sentencing hearing; and (3) the court erred when it failed to admonish her about TASC probation. We affirm the court's ruling on the motion to quash and suppress, vacate defendant's sentence of 24 months of probation for unlawful possession of a controlled substance, and remand this cause for a new sentencing hearing.

¶ 2    The following facts are relevant to resolving the issues raised. At the suppression hearing, defendant played a recording of a call that was made to the Freeport police department around lunchtime on October 11, 2011. In that call, a man, who later identified himself as "Roger Jordan," first asked, "Is Madigan *** in today?" After he was told that Madigan could not be reached, Jordan asserted, "I am bringing a lady[, whom Jordan later identified as 'Rhonda Miller,'] back from Rockford." Jordan advised the police that "[defendant] just picked up some crack" and that "[he had] been talking to Haas about it." Jordan stated that "[he and defendant] will be coming back to Freeport in a few minutes" and that "[defendant had] $70 worth of shit and her pipe and everything in [Jordan's] car." When asked to give the police a phone number at which they could call him back, Jordan explained that the police could not call him back, because defendant would be in his car. However, Jordan told the police that he would be "coming in [Route] 75 *** past Taylor Park School," that he had a "headlight out" on his car,

- 2 -

that his license plate number was "K340923," that he was driving a "brown Toyota Corolla," and that he would be in the area within "20 minutes [or] ½ an hour."

¶ 3 Thereafter, Officer Brandae Hilby received a computerized message from dispatch advising her that "there would be a brown Toyota coming in westbound off of Route 75." The message further relayed that "Roger Jordan[, with whom Officer Hilby had never worked,] would be driving the car[,] and he advised he would have a headlight out." "[Jordan] also advised dispatch that one of the occupants in the car would be having a large amount of crack cocaine on their person." Dispatch gave Officer Hilby a license plate number for the Toyota, but Officer Hilby could not remember any part of it except "K34," and she could not remember whether dispatch gave her the name of the passenger in the car. Officer Hilby went to Route 75, where Jordan indicated he would be, and two to three minutes later she saw the brown Toyota. Jordan flashed his headlight, Officer Hilby activated the emergency lights on her squad car, and Jordan pulled over to the side of the road; Officer Hilby stopped the car based on the fact that the driver's-side headlight on the car was not working.

¶ 4 After Officer Hilby initiated the stop, three other officers arrived on the scene, and Jordan gave permission for the police to search his car. During that search, officers found, among other things, a cylindrical glass tube used to ingest cocaine and several knotted baggies of crack cocaine. These items were found in a backpack, which was positioned between defendant's legs when she was sitting in the car, and a small coat that defendant had wrapped around her but left inside the car when she exited.

¶ 5 Officer Aaron Haas, one of the officers who arrived on the scene, testified that he had spoken to Jordan at least twice within a month or two before October 11, 2011. When Jordan would call Officer Haas, who was working with the street-crimes unit at that time, he would always identify himself. Jordan, who did not receive any type of benefit from the police for the information he gave them, would tell Officer Haas about defendant's involvement in drug-related activities. Officer Haas did not speak with Officer Hilby before Jordan's car was stopped.

¶ 6 The trial court denied defendant's motion to quash her arrest and suppress the evidence seized. In doing so, the court found that Jordan was a reliable informant given the fact that he was a private citizen; provided the police with a description of the car, including the registration number and the fact that one headlight was out; told the police the route that the car would be traveling; and told the police when the car would arrive at a specific location.

¶ 7 At defendant's bench trial, Officer Hilby testified that the glass cylinder that the police found in the jacket in Jordan's car was a crack pipe. The pipe was burnt at one end, and it had a burnt residue inside it. In the backpack, Officer Hilby found a charboy and several pushers, which are used along with a crack pipe to ingest cocaine or heroin. She also found a couple of pieces of crack cocaine. Tests done on a loose substance found in the backpack indicated that the substance was cocaine. The trial court found defendant guilty of unlawful possession of a controlled substance and unlawful possession of drug paraphernalia.

¶ 8 At sentencing, the State asked for, among other things, 30 months of probation and jail time on the conviction of unlawful possession of a controlled substance. The State believed that this was appropriate based on information contained in the presentence investigation report (PSI). Specifically, although defendant admitted to using many different types of illegal drugs daily, she denied possessing any drugs when the police stopped Jordan's car. Defendant

admitted that she used drugs because she enjoyed the way they made her feel, and she asked that, if she were given probation, she not be required to submit to random drug testing.

¶ 9    Defense counsel agreed that he was "taken aback" by the same things that the State mentioned, including defendant's "head-strong attitude." However, counsel believed that, since the PSI was prepared, defendant had exhibited signs of humility and reasonableness that she might display in her statement to the court. Counsel also noted that defendant, whom counsel characterized as having a "strong addiction" to drugs, had attempted to undergo drug-addiction treatment in the past without success and that her prior criminal history consists only of traffic offenses. Given all of that, counsel asked that the court place defendant on first-offender probation for 24 months.

¶ 10   The court then asked defendant if she wished to make a statement, and she declined. In sentencing defendant, after assuring defendant that she did not have to make a statement if she did not want to, the court stated:

> "It was an interesting case. The Court did hear this in the form of a bench trial, and the [PSI] in some ways bears out parts of–in the statements–parts of what the Court was hearing. It's a little bit different thinking, in part, in regard to this, and I'm seeing that the conclusions that the–[probation officer] came to when she was drawing this up [are] some that the Court was concerned about as well.
>
> The defendant didn't take the first step toward rehabilitation, which is com[ing] forward in seeing the wrong and amending that, and that doesn't seem to have taken place quite yet; so for that reason what I'm going to do is not–it's not going to be that first offender type of outcome."

The court then imposed a sentence of 24 months' probation and 36 days in jail for unlawful possession of a controlled substance. Defendant asked "why [she] wouldn't be eligible for first offender probation." The court responded, "The reason I didn't put you on that is that there was ample opportunity previously for some sort of an agreement to be presented with that as a term of it or anything like that based on–and I've taken into account your history, as [your attorney] pointed out, is almost all driving offenses, but this is one that's enough of a concern that I determined that it would not be proper for you to have just the first offender." The court went on to note that defendant would not qualify for first-offender probation because the court "did not think that it would be a proper case for that."

¶ 11   Defendant moved the court to reconsider her sentence, asking the court to reduce the sentence of 24 months of probation to first-offender probation. Nowhere in the motion did defendant raise any issue related to TASC probation. At the hearing on the motion, counsel submitted to the court a letter that defendant wrote.[1] After the court read the letter, the parties presented their arguments. Defense counsel indicated that, because defendant might have been too shy to make a statement at the sentencing hearing, she prepared the letter. According to counsel, the letter, which apparently revealed that defendant was complying with the terms of probation, including random drug testing, showed that defendant had taken responsibility for her actions and had expressed a willingness to change. The State acknowledged that the letter established that defendant had a better attitude than the one she had at the sentencing hearing, and the State reiterated that defendant's criminal history is quite minor. However, the State

---

[1]This letter is not contained in the record on appeal.

believed that the term of 24 months of probation struck a good balance between what defendant and the State requested.

¶ 12 The court denied the motion. In reaching that result, the court commented:

"I received the letter and it will be a part of the record here in regard to it. Having heard this evidence and having conducted the earlier *** sentencing hearing, we had the [PSI] that was available earlier. *** However, the things that were before the Court as far as prior criminal history included a Class A misdemeanor failure to notify after damaging an unattended vehicle that was supervision. There were some other traffic matters and a number of traffic matters in Winnebago County including driving while suspended with a conviction and various other speeding and seat belt cases like this. The attitude of the defendant at the time of the [PSI] was different as well and I do want to point out as far as the sentence there was a request for a non-conviction type of disposition, however *this Court feels strongly that those kind[s] of dispositions should be reserved mainly for people that have plea agreements and things of that nature. Part of the thing is that the possibility of those kind[s] of dispositions leave once there is a trial that's held. And there was a trial on this matter and the Court heard the evidence and feels that the proper [sentence] was one that involved a shorter period of probation than was recommended by the State*." (Emphasis added.)

¶ 13 This timely appeal followed.

¶ 14 Defendant raises three issues on appeal. She argues that (1) her motion to quash and suppress should have been granted, because the police lacked a proper basis for stopping Jordan's car; (2) the court improperly refused to consider first-offender probation, based on the fact that defendant went to trial instead of pleading guilty; and (3) the court erred when it failed to admonish defendant about TASC probation. We address each issue in turn.

¶ 15 The first issue we consider is whether defendant's motion to quash and suppress should have been granted. Before addressing that issue, we make two observations. First, we note that the State does not claim that the stop was justified by the fact that one of the headlights on Jordan's car was not working. The State takes this position because the stop occurred around noon on a perfectly clear day and the statute requiring that both headlights be working applies only "during the period from sunset to sunrise, at times when rain, snow, fog, or other atmospheric conditions require the use of windshield wipers, and at any other times when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1000 feet." 625 ILCS 5/12-201(b) (West 2010). Accordingly, we consider only whether the stop of Jordan's car was proper based on the tip that the police received from Jordan.

¶ 16 Second, defendant never challenged in a posttrial motion the ruling on the motion to quash and suppress. Thus, she forfeited this contention. See *People v. Cosby*, 231 Ill. 2d 262, 271 (2008); see also *People v. Robinson*, 2013 IL App (1st) 102476, ¶ 95 ("When a defendant fails to challenge the denial of his motion to suppress in a posttrial motion, any claimed error relating to the motion to suppress is forfeited."). Recognizing this, defendant asks this court to review her claim for plain error or under the theory that her trial counsel was ineffective for failing to preserve her claim.

¶ 17 The plain-error doctrine permits this court to address an unpreserved error "when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

Under either prong, the first step in determining whether the plain-error doctrine applies is to determine whether any reversible error occurred. *People v. Patterson*, 217 Ill. 2d 407, 444 (2005).

¶ 18    A claim of ineffective assistance of counsel requires a defendant to establish that his attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Counsel will not be deemed ineffective for failing to raise a meritless issue. See *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 65.

¶ 19    Thus, under either theory, we first consider whether defendant's proposed issue has merit. See *Cosby*, 231 Ill. 2d at 273 (in the context of plain-error review, "[a]bsent reversible error, there can be no plain error"); *People v. Mahaffey*, 194 Ill. 2d 154, 173 (2000) (the prejudice prong of the ineffective-assistance-of-counsel test cannot be established when no error has occurred), *overruled on other grounds by People v. Wrice*, 2012 IL 111860.

¶ 20    Considering the merits of defendant's claim begins with deciding when defendant was seized. *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842, 849 (2003). The parties suggest that the seizure occurred when Jordan's car was pulled over. See *People v. Henderson*, 2013 IL 114040, ¶ 25 ("A passenger in a vehicle stopped by police *** is seized within the meaning of the fourth amendment ***."). The potential problem with that position is that Jordan, with full knowledge that the police were going to stop him, flashed his headlight to signal to Officer Hilby that his was the car that should be pulled over, and then he willingly pulled over when Officer Hilby activated the emergency lights on her squad car. Thus, an argument could be made that, at that point, there was no submission to Officer Hilby's authority (*id.*), and thus defendant was not seized. However, even if defendant was seized when Jordan yielded to Officer Hilby's emergency lights, the police had a proper basis to make that stop.

¶ 21    Generally, police may seize an individual only if they first obtain a warrant supported by probable cause. *People v. DiPace*, 354 Ill. App. 3d 104, 108 (2004). However, warrantless seizures are proper in limited circumstances. One of those is a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *DiPace*, 354 Ill. App. 3d at 108. Under *Terry*, an officer may make an investigatory stop without probable cause if the officer reasonably believes that the person stopped or seized has committed, is committing, or is about to commit a crime. *Id.*

¶ 22    "In order to stop a vehicle, an officer must have a reasonable suspicion that the vehicle or an occupant is subject to seizure for a violation of law." *Id.* Reasonable suspicion is premised on specific and articulable facts, not a mere hunch. *Id.* In determining whether the police had reasonable suspicion, a court looks at the totality of the circumstances. *Id.* Information available to one police officer may be imputed to another officer conducting the stop. *People v. Linley*, 388 Ill. App. 3d 747, 749 (2009).

¶ 23    Moreover, facts giving rise to reasonable suspicion need not be based on the personal observations of the police. *Id.* at 750. Rather, facts supporting the stop may be based on information the public provides to the police. *Id.* Where a citizen informant advises the police about criminal activity, the information must possess some indicia of reliability in order to justify a subsequent stop. *Id.* Factors adding to this reliability include whether the information was independently corroborated and whether the citizen informant gave his name, witnessed the reported offense, or offered to sign a complaint. *Village of Mundelein v. Minx*, 352 Ill. App.

3d 216, 221 (2004). In contrast, factors detracting from this reliability include whether the informant was paid, failed to give his name, or did not witness the reported offense. *Id.*

¶ 24    Although courts no longer presume that citizen informants are more reliable than paid informants, the distinction is still relevant in assessing the reliability of the information. *People v. Nitz*, 371 Ill. App. 3d 747, 752 (2007). Similarly, information coming from an identified informant is more reliable than an anonymous tip. See *Linley*, 388 Ill. App. 3d at 751. "[W]hen information comes from a named witness, it remains the case that a *minimum* of corroboration or other verification of the reliability of the information is required." (Emphasis added.) *Thompson*, 341 Ill. App. 3d at 851.

¶ 25    On appeal from an order denying a motion to quash and suppress, we employ a two-part standard of review. *Nitz*, 371 Ill. App. 3d at 749-50. The trial court's findings of fact are upheld unless they are against the manifest weight of the evidence. *Id.* at 750. Findings are against the manifest weight of the evidence when they are unreasonable, arbitrary, or not based on the evidence or when the opposite conclusion is clearly evident. *People v. Colquitt*, 2013 IL App (1st) 121138, ¶ 28. However, the ultimate issue of whether to quash and suppress is a legal one subject to *de novo* review. *Nitz*, 371 Ill. App. 3d at 750. Here, because the trial court's factual findings are not at issue, we only consider *de novo* whether the trial court's denial of defendant's motion to quash and suppress was proper.

¶ 26    With all of these principles in mind, we turn to the facts presented in this case. Jordan called the police to tell them that defendant, whom he named, had $70 worth of cocaine and a crack pipe in his car. Jordan gave the police his name, as he did when he called the police in the past, and he received no benefit from the police for the information he gave them. Thus, as a named citizen informant who was aware of facts indicating that defendant was committing a crime, only a minimum of corroboration was necessary to establish that the information was reliable. We believe that this threshold was met.

¶ 27    Specifically, Jordan gave the police information about his car, such as the color, make, model, and license plate number and the fact that one of the headlights was not working, and he told the police where he would be at a specified time. Shortly after Officer Hilby arrived in that area, she saw the car described to her by the dispatcher. The fact that Jordan gave the police details that the police were able to confirm created reasonable suspicion that justified the stop of Jordan's car. See *Thompson*, 341 Ill. App. 3d at 851 (because the informant was identified, corroboration of innocent details, like locating the van where the informant said it would be, created a strong inference that the informant based his knowledge on first-hand observation).

¶ 28    Citing *People v. Sparks*, 315 Ill. App. 3d 786 (2000), defendant argues that the stop was improper because the corroboration was of innocent details and not of any unlawful conduct in which defendant was engaged. In *Sparks*, a known informant, who was not named at the suppression hearing, was told that, in exchange for information about the defendants, the police would " 'work on' " charges pending against the informant. *Id.* at 788. The informant told the police that the defendants were in possession of contraband; he gave the police the make, model, color, and license plate number of the car in which the defendants would be traveling; he told the police the names, races, and approximate ages of the defendants; and he advised the police about the date and the approximate time, *i.e.*, the afternoon, that the defendants would be arriving in Springfield. *Id.* In response to this information, the police positioned themselves at various places along Interstate 55, and, at 6:30 p.m., they spotted the car in which the defendants were riding. *Id.* at 789. The police stopped the car, and, in a

subsequent search, the police found cannabis in the trunk of the car. *Id.* The trial court granted the defendants' motion to quash and suppress, and the State appealed. *Id.* at 790.

¶ 29    The appellate court affirmed. *Id.* at 795. In doing so, the court noted that the tip failed to provide the police with reasonable suspicion to stop the car. *Id.* That is, the court questioned the reliability of the informant because there were no previous dealings with the informant establishing that the informant was truthful; the informant was working with the police because he hoped that the police could " 'help' " him with some charges pending against him; and the informant did not indicate that he witnessed the defendants engaging in any criminal activity. *Id.* at 794.

¶ 30    Here, in contrast to *Sparks*, we determine that Jordan was a reliable informant. That is, unlike the informant in *Sparks*, Jordan was identified and received no benefit from the police for the information he gave them. Moreover, unlike in *Sparks*, where the informant told the police that the defendants had "contraband" in the car (*id.* at 788), Jordan was specific in telling the police that defendant was in possession of $70 worth of cocaine and a crack pipe. Such facts clearly showed that, unlike the informant in *Sparks*, Jordan had witnessed defendant engaging in criminal activity. Although the court in *Sparks* found the tip unreliable because, among other things, "the tip provided no details of criminal activity that police were able to adequately corroborate prior to stopping defendants" (*id.* at 795), corroborating the criminal activity is not always required. Rather, when an informant is reliable and provides the police with specific details concerning the defendant's engaging in criminal activity, the police will be justified in acting on that tip even when they corroborate only innocent details, like the make, model, color, and license plate number of the car in which the defendant is riding. See *Thompson*, 341 Ill. App. 3d at 851. If this were not the case, meaning that the police would always have to witness the criminal activity, information received from informants would become immaterial. See *DiPace*, 354 Ill. App. 3d at 110 (noting that, regardless of any erratic driving the arresting officer observed, the information the police received from reliable informants provided the police with reasonable suspicion to stop the defendant for driving while under the influence).

¶ 31    Defendant also suggests that, because Jordan controlled the acts that the police observed before stopping the car, the tip was of little value and failed to give the police reasonable suspicion. Although we found authority supporting such a principle (see *Clifford v. State*, 750 So. 2d 92 (Fla. Dist. Ct. App. 1999)), we find this position indefensible. In our view, the fact that Jordan was driving is inconsequential. At issue is the *reliability* of the tip, and, even if the tipster happens to be the driver, when the tipster gives the police a description of the car he is driving and then is found at the specified location at the specified time, the tip becomes more, not less, reliable.

¶ 32    Having found that defendant's motion to quash her arrest and suppress the evidence seized was properly denied, we next address whether the trial court erred when it refused to consider giving defendant first-offender probation for her conviction of unlawful possession of a controlled substance. Section 410(a) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/410(a) (West 2010)) provides for first-offender probation. It states:

> "Whenever any person who has not previously been convicted of, or placed on probation or court supervision for any offense under this Act or any law of the United States or of any State relating to cannabis or controlled substances, pleads guilty to or is found guilty of possession of a controlled substance or counterfeit substance under

subsection (c) of Section 402 *** the court, without entering a judgment and with the consent of such person, may sentence him to probation." *Id.*

¶ 33    As the clear and unambiguous language of section 410(a) indicates (see *People v. Martino*, 2012 IL App (2d) 101244, ¶ 25), the court may give a defendant first-offender probation if the specified requirements are met. Defendant has met those requirements here. Specifically, defendant was found guilty of a qualifying offense, she had never been placed on probation or court supervision for a controlled substance or cannabis offense, and, because she asked for it, she clearly would consent to being placed on first-offender probation.

¶ 34    However, even when all of the conditions are met, a defendant is not automatically entitled to first-offender probation. Rather, section 410(a) makes clear that the court still has the discretion to grant or deny it based on the unique facts of each case. Thus, the question becomes whether the trial court properly denied first-offender probation here based on an assessment of the facts.

¶ 35    The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A reviewing court should not disturb a sentence that is within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). Here, defendant was convicted of unlawful possession of a controlled substance, which is a Class 4 felony. 720 ILCS 570/402(c) (West 2010). A defendant convicted of a Class 4 felony is eligible for, among other things, a term of probation not to exceed 30 months. See 730 ILCS 5/5-4.5-45(d) (West 2010). Defendant's sentence of 24 months of probation was thus statutorily authorized.

¶ 36    However, as noted, even when a sentence falls within the applicable range, it can be altered if the trial court abused its discretion in imposing it. *Stacey*, 193 Ill. 2d at 209-10. A trial court abuses its discretion when, among other things, it fashions a sentence based on the court's personal beliefs or arbitrary reasons. See *People v. Bolyard*, 61 Ill. 2d 583, 586-87 (1975). Such considerations, rather than authorized factors, can warrant remandment for resentencing. *Id.*

¶ 37    However, reliance on an improper factor does not always necessitate remandment for resentencing. *People v. Bourke*, 96 Ill. 2d 327, 332 (1983). Remandment is not required when it can be determined from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence. *Id.* In considering whether reversible error occurred, a reviewing court should not focus on a few words or statements of the trial court, but should make its decision based on the record as a whole. *People v. Curtis*, 354 Ill. App. 3d 312, 326 (2004).

¶ 38    Reviewing the court's complained-of comments within the context of the record as a whole, we conclude that remandment is necessary. Here, the court explicitly invoked its "strong" belief that first-offender probation should be limited to defendants who plead guilty. See *Bourke*, 96 Ill. 2d at 333. Although the court properly considered that defendant expressed no remorse, the court, when defendant asked point blank why it was not going to give her first-offender probation, stated that "there was ample opportunity previously for some sort of an agreement to be presented with that as a term of it." At the hearing on the motion to reconsider, where the court found that defendant's attitude was more positive than it was at the sentencing hearing, the court refused to give defendant first-offender probation, because the "[first-offender probation] kind of dispositions should be reserved mainly for people [who]

- 9 -

have plea agreements and things of that nature." The court went on to note that "[p]art of the thing is that the possibility of those kind[s] of dispositions leave once there is a trial that's held." Reading these statements together, it is clear that the court wrongly believed either that first-offender probation was unavailable because defendant did not plead guilty or that defendant should be denied first-offender probation because of the court's personal belief that only those who enter plea agreements should have that option.

¶ 39    The State argues that the court properly denied defendant first-offender probation because defendant "continued to show a lack of remorse and continued to maintain that she was innocent." We disagree. Although that might have been part of the court's reasoning, the court made quite clear that it was not going to give defendant first-offender probation because the court believed that first-offender probation was appropriate only for those defendants who plead guilty. Because we determine that the court abused its discretion when it refused to consider first-offender probation, we remand this cause so that defendant can have a new sentencing hearing where proper factors are considered. *Bolyard*, 61 Ill. 2d at 587.

¶ 40    The last issue that defendant raises is whether the trial court erred when it did not admonish her about TASC probation. Defendant argues that the court was required to advise her about TASC probation, because she met all of the statutory requirements and the record is replete with evidence indicating that she is addicted to drugs. See generally 20 ILCS 301/40-10 (West 2010). Observing that she forfeited her claim by failing to preserve it in the trial court, defendant argues that this court should nevertheless consider the issue pursuant to the plain-error doctrine. Citing *People v. McNulty*, 383 Ill. App. 3d 553, 556-57 (2008), the State argues that plain-error review is unavailable.

¶ 41    Given that we are remanding this cause for a new sentencing hearing, we find it unnecessary to resolve this issue. Rather, on remand, if the trial court finds that defendant has met the statutory requirements and that she is addicted to drugs, it should admonish her about her eligibility for TASC probation.

¶ 42    For these reasons, we affirm the order of the circuit court of Stephenson County denying defendant's motion to quash her arrest and suppress the evidence seized; we vacate her sentence of 24 months of probation for unlawful possession of a controlled substance; and we remand this cause for a new sentencing hearing, where the court should consider proper sentencing factors and whether defendant is entitled to admonishments about TASC probation.

¶ 43    Affirmed in part and vacated in part; cause remanded.