# Illinois Official Reports

## Appellate Court

---

### *People v. Rodriguez-Palomino*, 2019 IL App (2d) 160361-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PABLO RODRIGUEZ-PALOMINO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0361 |
| Filed<br>Rehearing denied | April 24, 2019<br>May 23, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 13-CF-3036; the Hon. George D. Strickland, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Kerry Goettsch, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, David J. Robinson, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Presiding Justice Birkett and Justice Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a jury trial in the circuit court of Lake County, defendant, Pablo Rodriguez-Palomino, was found guilty of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2002)) and nine counts of aggravated criminal sexual abuse (*id.* § 12-16(c)(1)). The trial court sentenced defendant to life imprisonment for each count of predatory criminal sexual assault of a child and seven years for each count of aggravated criminal sexual abuse. The trial court ordered the sentences for predatory criminal sexual assault of a child to be served consecutively. The trial court ordered the sentences for aggravated criminal sexual abuse to be served consecutively to one another but concurrently with the sentences for predatory criminal sexual assault of a child. The offenses were committed against three female victims: G.M., K.S., and R.A. Two counts of predatory criminal sexual assault of a child and three counts of aggravated criminal sexual abuse were crimes against R.A. Defendant argues on appeal that the State failed to prove beyond a reasonable doubt that he was guilty of those crimes. Defendant also argues that the trial court erred in ordering the sentences for aggravated criminal sexual abuse to be served consecutively. We affirm.

¶ 2                                I. BACKGROUND

¶ 3      A Lake County grand jury returned a 15-count indictment against defendant. The charges relating to R.A. originally alleged that the offenses occurred between October 11, 2007, and October 10, 2008. Defendant later disclosed that he intended to introduce evidence that he was in Mexico from April 2005 through 2009. The State subsequently secured an additional indictment, which alleged that the offenses against R.A. occurred between October 11, 2004, and October 10, 2006.

¶ 4      Defendant was tried twice in this matter. The first trial ended in a mistrial. Evidence at defendant's second trial established that T.M. was the victims' mother and had been defendant's girlfriend. T.M. testified that K.S. was born on August 24, 1990, G.M. was born on December 12, 1994, and R.A. was born on October 12, 1998. T.M.'s youngest child, Ra. A., a boy, was born on September 6, 2001. T.M testified that she began dating defendant in 2002. Defendant later bought a house, and T.M. and her children moved in with him sometime after July 22, 2003. Defendant's brother, Nevus, also lived with them.

¶ 5      Defendant worked during the first year he lived with T.M. and her children, but he then retired. Before retiring, he worked for a construction or landscaping company, five days a week. T.M. cleaned houses for a living. She started work at 7 a.m. and finished between 7 and 9 p.m. G.M. and K.S. attended school. R.A. and Ra. A. went to a babysitter across the street from the house. G.M. and K.S. finished school at 3 or 4 p.m., at which point K.S. would take R.A. and Ra. A. home. Defendant and Nevus would be home around that time. During the second year that T.M. lived with defendant, she had a work accident requiring spinal surgery and was hospitalized for 8 to 10 days. After being released from the hospital, T.M. took pain medication for over a month. The medication made her drowsy.

¶ 6      T.M. testified that defendant traveled to Mexico for extended periods during the years they were together. On one occasion in 2005, defendant returned on Thanksgiving from a trip to Mexico. Defendant moved to Mexico permanently in January 2006. After defendant left, T.M. got married. She did not see defendant again until October 2013, when she encountered

him in a store. They spoke briefly. T.M. saw defendant again about a month later at a restaurant where she was having breakfast with her husband and R.A.

¶ 7   G.M. testified about an incident in the fall of 2003 or 2004, when she was eight or nine years old. While wrapped in a towel after taking a shower, G.M. encountered defendant, who commented that G.M. was starting to look like her mother. Defendant told G.M. that she was getting older and that it was time for her to learn how to kiss like a grownup. Defendant kissed her on the mouth. He then laid her on the couch, unwrapped the towel, touched her breast, and put his finger in her vagina. A few weeks later, G.M. was taking care of R.A. and Ra. A. while T.M. was at the hospital visiting R.A.'s father, who had suffered a stroke. At about midnight, G.M. was watching television by herself in the living room. Defendant sat down next to her and touched her breast.

¶ 8   K.S. testified that on one occasion, while she was grabbing clothes from the laundry, defendant came up from behind and started hugging her. He told her that her pants looked good and that her breasts were growing. Defendant grabbed her breast and her vagina. K.S. testified that she was around 13 years old when this occurred. Another incident occurred a few months later. K.S. went to look for T.M. in the bedroom that T.M. shared with defendant. Defendant was in the bedroom. He pushed K.S. against a wall and started kissing her. K.S. testified that defendant tried to put his tongue in her mouth. He also touched her vagina over her clothing and touched her breast. A few months later an incident occurred in the living room while K.S. was watching television. She testified that defendant came up behind her and put his hand on her breast over her clothing.

¶ 9   R.A. testified that on one occasion defendant exposed his erect penis to her and she ran away. R.A. also testified about five additional incidents that occurred on separate occasions in the bedroom that T.M. shared with defendant.

¶ 10   On the first of those occasions, R.A. went into the bedroom. T.M. was there, as were defendant and Ra. A. T.M. was sleeping, and Ra. A., who was three or four years old, was on the corner of the bed, playing a video game. Defendant was on the bed watching the game. R.A. lay down between defendant and T.M. Defendant stood up and pulled his pants down. He also took R.A.'s pants off. Defendant pulled R.A. to the side of the bed by her legs and put his penis in her vagina. R.A. was six or seven years old at the time.

¶ 11   On the second occasion, defendant asked R.A. to bring him a glass of water in the bedroom. When R.A. got to the bedroom, defendant and Ra. A. were there. Ra. A. was watching television, and defendant was lying on the bed. R.A. sat on the bed, and defendant started touching her vagina over her pants.

¶ 12   On the third occasion, R.A. went into the bedroom when defendant and Ra. A. were there. Ra. A. was again playing a video game. R.A. sat on the corner of the bed. Defendant grabbed her, pulled both of their pants down, and put his penis in her vagina.

¶ 13   On the fourth occasion, R.A. went into the bedroom. Defendant, T.M., and Ra. A. were there. T.M. was sleeping, and Ra. A. was watching television. R.A. lay in the bed, and defendant started touching her vagina under her pajama pants with his fingers.

¶ 14   The fifth occasion was after R.A. had a "Bratz"-themed party for either her sixth or seventh birthday. R.A. went to the bedroom. Defendant and Ra. A. were there. Ra. A. was watching television. R.A. sat on the bed, and defendant put his hand under her pants and underwear and rubbed her vagina.

¶ 15 At one point, defendant threatened to hurt R.A. and her family if she told anyone what he had done to her.

¶ 16 R.A. testified that, after defendant moved out of the house, she saw him again around October 2013 in a store that she and T.M. were visiting. Defendant and T.M. exchanged greetings. R.A. testified that the encounter reminded her of all the things that defendant had done to her. Months later, R.A. saw defendant at a restaurant. Again, she remembered what defendant had done to her. She went to the bathroom and started crying.

¶ 17 Not long after seeing defendant at the restaurant, R.A. told T.M. what defendant had done. T.M. contacted the police. R.A. acknowledged that, when she spoke to the police, she told them that the incidents occurred when she was nine. She explained that the incidents occurred around the time of her Bratz birthday party. She initially thought that that party was for her ninth birthday. At some point while looking at old photographs, she realized that the Bratz party was for her sixth or seventh birthday.

¶ 18 Defendant testified that, when he was employed, he worked long hours and arrived home between 5:30 and 7 p.m. Defendant denied that he was home when T.M.'s children returned from school or from the babysitter. Defendant testified that he retired in 2004 and that in March or April 2005 he left the house he shared with T.M. and her children. Defendant denied molesting any of T.M.'s daughters.

¶ 19 The jury found defendant guilty of one count of predatory criminal sexual assault of a child against G.M. and two counts of predatory criminal sexual assault of a child against R.A. The jury also found defendant guilty of two counts of aggravated criminal sexual abuse against G.M., four counts of aggravated criminal sexual abuse against K.S., and three counts of aggravated criminal sexual abuse against R.A. This appeal followed.[1]

¶ 20                                    II. ANALYSIS

¶ 21 Defendant argues that R.A.'s testimony was unreliable and thus insufficient to sustain the convictions of the offenses of which she was the victim. Defendant asserts that (1) the crimes were not reported until at least eight years after they occurred, (2) they all allegedly occurred in the same room with at least one other person present, (3) R.A. admitted that, when she first spoke to police, she was mistaken about her age when the offenses occurred, and (4) her testimony as to when the offenses occurred was incorrect because defendant had already moved to Mexico.

¶ 22 A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). On a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

_____

[1]We initially dismissed the appeal for lack of jurisdiction, but the supreme court directed us to address the merits. *Rodriguez-Palomino v. Burke*, No. 124319 (Ill. Dec. 21, 2018) (supervisory order).

¶ 23    Whether the offenses could have occurred in the manner that R.A. described them was a matter for the jury to decide. It is not our role to substitute our judgment for the jury's. It was not unreasonable to believe that T.M. could have continued to sleep while defendant engaged in acts of sexual conduct and sexual penetration with R.A. Nor was it unreasonable to believe that Ra. A., who was about four years old and absorbed watching television or playing video games, would not have noticed or understood defendant's actions.

¶ 24    R.A.'s delay in reporting what had occurred did not render her testimony unworthy of belief. She was quite young when the offenses occurred, and defendant threatened to harm her and her family if she reported the offenses. After defendant moved away, she might have seen no point in reporting what he had done. It was not unreasonable to believe that the trauma of encountering defendant years later would have led R.A. to reveal to her mother what defendant had done to her.

¶ 25    Nor are we convinced that the offenses could not have happened when R.A. said they did. R.A. placed the incidents around the time of her Bratz-themed birthday party. Defendant contends that the Bratz-themed party was for R.A.'s seventh birthday. After acknowledging her initial confusion, R.A. agreed that she was six or seven, meaning that the party occurred in either October 2004 or October 2005. Starting with the assumption that the party occurred in October 2005, defendant argues that R.A.'s testimony was incorrect because he had moved to Mexico in April 2005. However, there was conflicting testimony about when defendant moved to Mexico. T.M. testified that defendant moved in January 2006.

¶ 26    In support of his argument that we should reject the jury's determination that R.A. was a credible witness, defendant cites *People v. Schott*, 145 Ill. 2d 188 (1991). In *Schott*, our supreme court held that the complaining witness's testimony was too inconsistent and contradictory to sustain her stepfather's conviction of indecent liberties with a child where the witness had previously falsely accused a family member of sexual abuse; she admitted that she lied frequently; she had told several police officers and a child-welfare specialist that she had fabricated the allegations against her stepfather; and she had given inconsistent testimony in a related juvenile-court proceeding about where and when the offense took place, how often her stepfather had molested her, and other incidental matters. This case is in no way comparable to *Schott*. We therefore conclude that the State presented evidence upon which a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. See *Collins*, 106 Ill. 2d at 261.

¶ 27    We turn now to defendant's argument that it was error to impose consecutive sentences for his aggravated-criminal-sexual-abuse convictions. We initially note that the State argues that defendant forfeited the issue by failing to raise it below. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the issue is reviewable if the defendant establishes plain error. *Id.* at 545. "The plain-error doctrine permits this court to address an unpreserved error 'when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence.' " *People v. Miller*, 2014 IL App (2d) 120873, ¶ 17 (quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). The State contends that, because defendant does not argue that the imposition of consecutive sentences was plain error, he has forfeited plain-error review. Although defendant did not raise plain error in his

opening brief, he did raise it in his reply brief, which, as defendant notes, is sufficient to allow us to engage in plain-error review. *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010).

¶ 28   In determining whether the trial court committed plain error, the first step is to determine whether any reversible error occurred. *Miller*, 2014 IL App (2d) 120873, ¶ 17. During the relevant time frame, section 5-8-4(b) of the Unified Code of Corrections provided, in pertinent part, that

> "[t]he court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5-8-4(b) (West 2002).

Defendant argues that it was error to impose consecutive sentences for the aggravated-criminal-sexual-abuse convictions, because his three life sentences were sufficient to protect the public from further criminal conduct.

¶ 29   We acknowledge that there is authority supporting defendant's argument. *People v. Parker*, 141 Ill. App. 3d 643, 646-47 (1986) (where defendant was adjudged a habitual criminal and required to serve a life sentence for each of two Class X felonies, a single life sentence was sufficient to protect the public, and it was not necessary for the two life sentences to be served consecutively). However, there is authority to the contrary. In *People v. Hines*, 165 Ill. App. 3d 289, 307 (1988), the court held that the trial court did not err in ordering sentences for aggravated criminal sexual assault, criminal sexual assault, and aggravated kidnapping to run consecutively to a life-imprisonment term for murder. The *Hines* court reasoned as follows:

> "Nowhere does the statute prohibit the court from imposing sentences consecutive to a term of natural-life imprisonment. Numerous cases have allowed it. (*People v. Bush*[, 103 Ill. App. 3d 5 (1981)]; *People v. Wilson*[, 138 Ill. App. 3d 513 (1985)]). In addition, consecutive sentencing may well be beneficial even under these circumstances should defendant's life sentence be subsequently modified, commuted or reduced." *Id.*

See also *People v. Leger*, 208 Ill. App. 3d 333, 340 (1991).

¶ 30   We find the *Hines* court's reasoning more persuasive than the *Parker* court's. Defendant's life sentences for predatory criminal sexual assault of a child do not necessarily eliminate the need for consecutive sentences for the less serious offenses. Here, the trial court stated, "if the defendant was ever put in a position where he could reoffend, I cannot say that these events would not take place again, and as a matter of fact, I find that these offenses based on what he had already done are likely—would be likely to reoccur." Although the trial court did not use the precise language of section 5-8-4(b), it definitely conveyed the opinion that consecutive sentences were "required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(b) (West 2002).

¶ 31                                    III. CONCLUSION

¶ 32   For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166,

178 (1978).

¶ 33          Affirmed.