NOTICE

Decision filed 09/22/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220089-U

NOS. 5-22-0089, 5-22-0090 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | Nos. 20-CF-1013 & 20-CF-1094 |
| | ) | |
| LINDY J. MILLER, | ) | Honorable |
| | ) | Thomas E. Griffith, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the defendant's sentences, because we do not agree with the defendant's assertion that the record shows that when sentencing the defendant, the trial judge failed to consider adequately the defendant's evidence in mitigation, and instead overemphasized the factors in aggravation.

¶ 2    This consolidated appeal involves two criminal felony cases from the circuit court of Macon County. The defendant in both cases, Lindy J. Miller, entered pleas of guilty to burglary, and was sentenced in each case to a three-year term of imprisonment in the Illinois Department of Corrections (IDOC), with the terms to be served consecutively, as required by statute, and followed by a one-year term of mandatory supervised release (MSR). On appeal, she contends the trial judge who sentenced her in the cases failed to consider her "strong mitigating evidence," and asks this

1

court to reduce her sentences to a term of probation, or to remand for a new sentencing hearing. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 17, 2020, the defendant was charged, by information in case No. 20-CF-1013, with, *inter alia*, one count of the Class 2 felony of burglary. On September 1, 2020, the defendant was charged, by information in case No. 20-CF-1094, with an additional count of the Class 2 felony of burglary, related to a different alleged incident than that in the first burglary charge. On December 14, 2020, the defendant entered pleas of guilty to the two counts of burglary, as well as written waivers of her right to a trial by jury, in exchange for multiple other charges against her being dropped, and with the understanding that the defendant would be evaluated for placement in a diversion program such as a drug court. Counsel for the defendant noted that it was her understanding that if the defendant was not accepted into a diversion program, she would have to be sentenced as a Class X offender due to her prior criminal history, and that any sentences for the two burglary offenses would have to be served consecutively, rather than concurrently. The trial judge then admonished the defendant personally and ascertained that she understood this as well. Thereafter, a factual basis was provided for the pleas.

¶ 5      At a hearing on May 10, 2021, counsel for the defendant stated on the record that the defendant had been denied participation in drug court. Therefore, the case was set for sentencing, with a presentence investigation report (PSI) to be created and filed. On May 18, 2021, the PSI was filed. The sentencing hearing was scheduled to be held on May 27, 2021, but counsel for the defendant requested a continuance, noting that legislation that was set to take effect on July 1, 2021, would change the sentencing requirements in this case, so that the defendant would no longer be required to be sentenced as a Class X offender. The State did not object to the continuance, and the trial judge granted it.

¶ 6    On July 6, 2021, the sentencing hearing was held. At the outset, the trial judge noted that under the new sentencing legislation, the defendant "could be sentenced to probation[, or] *** to conditional discharge," but also noted that if she was sentenced to IDOC, "the sentences have to run consecutively to one another." He asked the State and the defendant if they had any corrections to the PSI to note. The State did not. Counsel for the defendant noted minor errors that are not relevant to this appeal. The State declined to present evidence in aggravation. In mitigation, counsel for the defendant called the defendant's mother, Lee Miller, to testify.

¶ 7    Lee testified about a number of serious medical issues the defendant was having that were not easily treated while incarcerated, as well as about the defendant's "longstanding" substance abuse and addiction issues. She testified that the defendant had never been in long-term inpatient treatment or "had an extended period of drug rehab." She testified that when the defendant was not incarcerated, and was sober, the defendant helped take care of the defendant's two sons, who lived with Lee and her husband. Lee testified that she had located a residential year-long drug treatment program that was willing to take the defendant, and that the defendant was "thrilled" to try the program. An exhibit admitted into evidence shows that the program was called the Jesus House Restoration Center, and was run by a group called the Jesus House Restoration Ministries. Lee testified that, in comparison to earlier phases of her addiction, the defendant now seemed much more motivated to treat her addiction issues. She testified that at the residential program, the defendant would be required to work, and to save some of her money, which could then be used to pay court costs, restitution, and other expenses related to her case.

¶ 8    Following Lee's testimony, the defendant made a statement in allocution, in which she stated that she was "embarrassed and ashamed of [her] actions," and hated the person she became when using drugs. She stated that whereas in the past she had been irresponsible, she was now ready to take responsibility for her actions and to become sober. She stated that she was remorseful

for the pain she had caused her sons, and her parents, and that she was in need of treatment and recovery. She acknowledged that her attempts at recovery in the past had failed, but stated that she believed she would succeed if admitted to the year-long residential program, and also could get treatment for her serious medical issues while there. She stated that she did not believe she would receive adequate treatment if incarcerated, which would delay or prevent her recovery.

¶ 9    The trial judge then asked the State for its recommendation. Counsel indicated his concern that rather than "ag[ing] out of crime," as many people do, the defendant's criminal acts were getting worse with age. He also noted her failures in earlier placements in drug court, and stated that he did not believe she would have a different result at the Jesus House Restoration Center. He argued that IDOC had treatment programs, and that his recommendation was that she be sentenced to the minimum sentence of three years on each burglary count, for a total sentence of six years.

¶ 10    Counsel for the defendant argued that all of the defendant's crimes were "addiction driven *** to get money to buy drugs," and that if the defendant could get treatment for her addiction issues, she would no longer be a threat to the community. She argued that drug court was often unsuccessful because it was community-based, whereas the option presented by the Jesus House Restoration Center was "an intense residential program where she would stay on the campus for a twelve-month program and get the services and get tested and be held accountable and hopefully gain the tools to live a sober life." She argued that IDOC would not help treat the defendant in any meaningful way, and she would likely relapse upon her release from incarceration in IDOC. She recommended a sentence of "a three-year term of probation so that she can do a year with this program and then maintain that two additional years in both of these matters."

¶ 11    The trial judge stated that the defendant was "thirty-eight years of age *** and still committing felonies," and that in exchange for her plea "there were a number of other cases dismissed," with a total of up to 8 to 10 cases pending against her at one point. He acknowledged

4

that "most of them were retail thefts or shoplifting" cases that were "no doubt *** an attempt to try to feed her drug addiction." He found that she had "a poor criminal history," with a lot of options "tried and failed," including multiple terms of probation, drug court, and sentences to IDOC. He stated to counsel for the defendant, "on balance, *** I hear you, and if we had some type of secure facility, I think your idea would be wonderful, but the Jesus House is not a secure facility, and I can't possibly recommend probation in a case like this." He further stated, "I just don't think [the defendant] would be successful," and added, "[a]nd if [she] is on the street, at some level, she is a danger to the public."

¶ 12 The trial judge then stated that he believed the State's recommendation was "more than reasonable." For each of the two cases, he stated that he had "considered the facts of this case, the factors in aggravation and mitigation and the [PSI]," and had determined "that a sentence of probation would deprecate the seriousness of the defendant's conduct, and a sentence to [IDOC] is necessary to protect the public." He sentenced the defendant to three years in IDOC in each case, with the two sentences to run consecutively as mandated by statute, for a total term of imprisonment of six years, followed by a term of MSR. He stated that he would recommend the defendant for substance abuse treatment within IDOC. The defendant thereafter filed motions to reconsider her sentences, which subsequently were denied with regard to the length of her sentences in IDOC. Following additional filings that are not relevant to the issue raised by the defendant in this court, these timely appeals were filed, and were consolidated by this court upon its own motion.

¶ 13                                II. ANALYSIS

¶ 14 On appeal, the defendant's sole contention is that the trial judge abused his discretion when he sentenced the defendant to a total term of imprisonment of six years, because that sentence was excessive in light of the defendant's "strong mitigating evidence." The defendant asks this court

to reduce her sentences to a term of probation, or to remand for a new sentencing hearing. In support of her argument, the defendant points to the sentencing hearing testimony of the defendant's mother, as well as to information found in the defendant's PSI, and contends that this evidence shows that the defendant has "terrible" physical health problems, and that her criminal behavior has always been driven by her substance abuse issues, for which she needs treatment, not incarceration. She argues that there is no evidence that her conduct caused or threatened any serious physical harm to anyone, or that she contemplated that her conduct would either cause or threaten serious physical harm, both of which were mitigating factors that merited consideration by the trial judge. She posits that her sentences do "not reflect adequate consideration of the mitigating evidence presented to the [trial judge], or an appropriate balancing of rehabilitation and retribution," and contends that the trial judge "focused primarily on the aggravating factors" while "ignoring" the factors in mitigation. As evidence of this, she points to the fact that the trial judge mentioned that the defendant was 38 years old and still committing felonies, and seemed to blame the defendant for her physical health problems by stating that they were "probably related to the longstanding addiction problems." She notes that a trial judge is required to consider, as a factor in mitigation, whether a sentence will endanger a defendant's health condition, and also is required to consider whether a defendant has been the victim of domestic abuse, which she contends also applies to her, as evidenced by the information in her PSI. She notes as well that her related mental health issues, also evidenced in the PSI, should have been viewed in mitigation too. She posits that her claims should be considered under the plain-error doctrine.

¶ 15    The State responds by asserting that the trial judge did not abuse his discretion in sentencing the defendant to three years in IDOC for each of the two counts of burglary to which the defendant entered a plea of guilty. The State notes that the sentences were the minimum permissible IDOC sentences, were to be served at 50%, and were "well within the statutory

6

sentence[s] for the offense[s]." The State argues that "the record demonstrates that the judge considered all the relevant factors in aggravations and mitigation," and that the "defendant was fully admonished regarding the possible sentences during her guilty plea." The State asserts that the PSI, being self-reported, contains only "self-serving statements" about the defendant being in abusive relationships and having physical and mental health problems, not any genuine proof with regard thereto. The State further asserts that the trial judge indicated that he had considered all of the facts of the cases, all of the factors in aggravation and mitigation, and the PSI, and that nothing in the record contradicts his statement. The State argues that, ultimately, there was no abuse of discretion in this case when one considers that (1) the defendant's "age tends to reduce the likelihood of rehabilitation," (2) the defendant has a lengthy criminal history and "has failed at multiple opportunities for probation," as well as at "two prior opportunities in alternative/drug court," and (3) the evidence demonstrates that the defendant has "relapsed almost immediately each time she [has been] discharged from prison."

¶ 16    In her reply brief, the defendant reiterates her contention that her sentences were excessive, for the reasons stated in her opening brief. She also takes issue with the State's argument that her PSI statements were "self-serving," noting that the State did not object to the PSI in the trial court, and therefore cannot, under existing precedent, object to it now. She takes issue with other factual aspects of the State's arguments as well, and notes that the State does not cite legal authority in support of some of its contentions.

¶ 17    We begin our analysis of the defendant's excessive sentencing argument by noting that because a sentence that is outside of the statutory sentencing range is void, not excessive, the phrase "excessive sentence" has been construed to mean something different: "a sentence *within* the statutory range but without regard for a particular defendant's rehabilitative potential." (Emphasis added.) *People v. Daly*, 2014 IL App (4th) 140624, ¶ 25. "The Illinois Constitution

7

provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id.* ¶ 26. Thus, a trial judge must balance "the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id*. To be reasonable, the resulting "sentence must be based on the particular circumstances of [the] case." *Id*. A reviewing court recognizes that the trial judge has the "opportunity to assess a defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age," and accordingly must afford due deference to the sentencing judgment. *Id*. Nevertheless, "the appellate court was never meant to be a rubber stamp for the sentencing decisions of trial courts," and we may disturb a sentence that is within the statutory range if we conclude that the trial judge committed an abuse of discretion in imposing the sentence. *Id*. If we conclude that there has been an abuse of discretion, we are authorized by the rules of the Illinois Supreme Court to reduce a defendant's sentence. *Id*. ¶ 40. If we determine that remand for a new sentencing hearing is a more appropriate remedy, we are permitted to order that the matter be assigned to a different judge on remand. *Id*.

¶ 18    "However, reliance on an improper factor does not always necessitate remandment for resentencing," and, for example, no remand is necessary "when it can be determined from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence." *People v. Miller*, 2014 IL App (2d) 120873, ¶ 37. "In fashioning the appropriate sentence, the most important factor to consider is the seriousness of the crime." *People v. Busse*, 2016 IL App (1st) 142941, ¶ 28. The trial judge is required to consider all factors in aggravation and mitigation, and we will presume the judge has done so unless there is "affirmative evidence" of the failure to do so. *Id.* ¶ 22. "There is no requirement that the [trial judge] must set forth every reason or specify the weight [given] to each factor when determining the sentence." *Id*. ¶ 24.

¶ 19    In this case, we agree with the State that there was no abuse of discretion with regard to the defendant's sentences. As noted immediately above, we will presume a trial judge has considered all factors in aggravation and mitigation unless there is "affirmative evidence" in the record of the trial judge's failure to do so, and also as noted immediately above, there is no requirement that the trial judge set forth every reason or specify the weight given to each factor when determining sentences. In this case, the trial judge specifically stated that he had considered not only "the factors in aggravation and mitigation," but also "the facts of this case *** and the [PSI]." There is no affirmative evidence in the record that he did not do so. Instead, we conclude that the defendant's argument on appeal that the trial judge overemphasized the factors in aggravation, and did not adequately consider the factors in mitigation, is simply an attempt to ask this court to reweigh the factors in a manner more favorable to the defendant, which we decline to do. See, *e.g.*, *Daly*, 2014 IL App (4th) 140624, ¶ 26 (reviewing court recognizes that trial judge has the "opportunity to assess a defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age"; accordingly, reviewing court affords due deference to a sentencing judgment).

¶ 20    We further conclude that the trial judge's determination, after considering all of the foregoing, "that a sentence of probation would deprecate the seriousness of the defendant's conduct, and a sentence to [IDOC] is necessary to protect the public," was not unreasonable and therefore was not an abuse of discretion. Viewed as a whole, the sentences in this case are reasonable, as we believe a reasonable trial judge could have concluded, based upon the facts before the judge in this case, that, although unfortunate, only incarceration in IDOC was an appropriate sentence in this case. This is particularly true in light of the defendant's repeated failures to take advantage of less-intrusive sentencing alternatives, which, very clearly, failed to restore the defendant to useful citizenship. See *id*. Indeed, the trial judge stated some of his

reasoning on the record, telling counsel for the defendant that "if we had some type of secure facility, I think your idea [for another chance at probation] would be wonderful, but the Jesus House is not a secure facility, and I can't possibly recommend probation in a case like this." He further explained that he did not "think [the defendant] would be successful," and added, "[a]nd if [she] is on the street, at some level, she is a danger to the public." All of these findings are supported by the record, which includes the defendant's extensive history of committing crimes when not incarcerated and not sober. Moreover, a reasonable trial judge, having determined that incarceration was necessary in this case, certainly would not err by giving the defendant the minimum sentences available, as the trial judge did in this case. Accordingly, we find no error.

¶ 21                                    III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the defendant's sentences.


¶ 23    Affirmed.