NOTICE

Decision filed 07/20/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210277-U

NOS. 5-21-0277, 5-21-0278, 5-21-0279 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clay County. |
| | ) | |
| v. | ) | Nos. 19-CF-60, 20-CF-37,  20-CF-41 |
| | ) | |
| NICHOLAS R. McCARTY, | ) | |
| | ) | Honorable Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because we agree with the defendant that when sentencing the defendant, the sentencing judge erred when he found "zero factors in mitigation," we vacate the defendant's sentence and remand for a new sentencing hearing before a different judge.

¶ 2    In this consolidated appeal from three criminal felony cases in the circuit court of Clay County, the defendant in all three cases, Nicholas R. McCarty, contends his combined total sentence of 11 years in the Illinois Department of Corrections (IDOC), following the revocation of the defendant's participation in a diversion program known as Problem Solving Court, is excessive and constitutes an abuse of discretion by the sentencing judge. For the following reasons, we vacate the defendant's sentence and remand for a new sentencing hearing before a different judge.

1

¶ 3                    I. BACKGROUND

¶ 4     On June 7, 2019, the defendant was charged, by information in case No. 19-CF-60, with one count of the Class 3 felony of unlawful possession of less than five grams of methamphetamine. On June 5, 2020, the defendant was charged, by information in case No. 20-CF-37, with two counts of the Class 4 felony of possession of a lost or mislaid credit or debit card. On June 15, 2020, the defendant was charged, by information in case No. 20-CF-41, with one count of the Class 4 felony of violation of an order of protection. On August 28, 2020, the defendant pleaded guilty to each of the foregoing charges in exchange for being allowed to participate in a diversion program known as Problem Solving Court. Prior to accepting his plea, the judge overseeing the cases at that time admonished the defendant as to the charges he faced, the possible punishments, the rights he was giving up by pleading guilty, and the requirements of the program he sought to enter. The judge specifically admonished the defendant that because of his prior criminal history, he was eligible for extended sentencing if convicted of the offenses, and was eligible, under certain circumstances, for consecutive sentences as well. The judge thereafter admonished and questioned the defendant to ensure that the defendant's pleas of guilty were knowing and voluntary.

¶ 5     On November 6, 2020, the State filed a petition to revoke the defendant's participation in the Problem Solving Court program. The petition alleged that the defendant violated the rules and procedures of the program by, *inter alia*, (1) violating, on multiple occasions that were listed in the petition, a no-contact order that was entered on the day he was admitted to the program; (2) failing, on multiple occasions that were listed in the petition, to report for individual and group counseling that was required by the program; (3) failing, on multiple occasions that were listed in the petition, to report for drug testing that was required by the program; (4) failing, on multiple occasions that were listed in the petition, to report his residence as required; (5) failing to complete

a court-ordered sanction; (6) failing to conduct a check-in as required; and (7) testing positive for methamphetamine and THC on October 30, 2020, and, via a diluted test, on November 4, 2020. The petition requested that the defendant be removed from the program and that "further criminal proceedings—specifically, a sentencing hearing" be held in the three cases.

¶ 6    On December 4, 2020, a hearing was held on the State's petition. At the outset of the hearing, counsel for the State indicated that it was his belief that the defendant planned to stipulate to the alleged violations of the rules of the program, but to argue that he should not be discharged from the program and instead should be given another chance in the program. Counsel indicated that he therefore intended to call witnesses to testify only as to whether, in light of the admitted violations, the defendant should remain in the program. Defense counsel agreed that the defendant would be stipulating to the violations and would be presenting evidence that he nevertheless should be allowed to remain in the program. The defendant was then advised again of the allegations in the petition, and he thereafter admitted to the violations alleged in the petition. The judge thereafter asked the State to present its witnesses.

¶ 7    The State's first witness was Tera Conklin, who testified that she was a probation officer in Clay County, and also was the Clay County officer for the Problem Solving Court. When asked to testify "holistically" about the defendant's "progress or lack thereof in the" program, she testified that he "started off better" than she expected him to, and that he listened and tried. When he was released from jail, he did not have a home to go to, so he was provided with a place to stay in Effingham. Conklin testified that she learned on October 14, 2020, that the defendant and the person he was prohibited by the no-contact order from having contact with were using methamphetamine at a hotel. She testified that she confronted the defendant about the violations, and advised him that he was "on thin ice" and "needed to turn it around." She testified that the defendant spent another five or six nights in jail, which she hoped would give him a fresh start,

3

but that once he was again released, he continued to violate the no-contact order and other rules of the program. Conklin testified that throughout the defendant's time in the program, he was given "progressive sanctions or punishment or behavior corrections," but that these did not make a positive difference. She testified that she believed he had not taken advantage of the opportunities afforded to him by the program, and that he was not honest with her about his behavior during his time in the program. She testified that she did not believe that the defendant would benefit from continued participation in the program. On cross-examination, Conklin agreed that the defendant was in compliance during the early days of his participation in the program, and agreed that the fact that shortly after that the defendant's children were removed from the custody of their mother—which meant that the defendant could no longer visit them—had a "very negative effect upon" the defendant. She agreed that under such circumstances, it would not be unusual to see a member of the program have a relapse, which is what happened in this case.

¶ 8    Kayla Althoff testified that she was a licensed clinical social worker with the Problem Solving Court program. She testified that she worked there as a primary counselor, and provided both individual and group counseling to participants, including to the defendant. She testified that the defendant was required to attend the counseling sessions "to help him manage his substance disorder and emotional regulation." She testified that she agreed with Conklin that at first the defendant tried, but that nevertheless, "he didn't open up in sessions." She testified that she tried to engage the defendant, but that he did not respond. She testified that she believed he was honest with her "[a]t times," but that overall, she thought she was putting more effort into helping the defendant than the defendant was putting in to help himself. On cross-examination, she testified that even after the issue with the defendant's children came up, she kept encouraging him to keep participating in the counseling required by the program. She agreed that losing access to his

children could "have a significant impact on" the defendant's general attitude, particularly in light of the defendant's drug addiction. She agreed it could cause a relapse.

¶ 9 Christa Kabbes testified that she was a counselor and case manager for the Problem Solving Court program. She testified that as a case manager, she helped participants with administrative tasks and led the group counseling programs. She testified that she did not believe the defendant progressed well at the beginning of the program, because "he was late or missed or rescheduled all of [their] appointments." She testified that he did not participate well in the administrative aspects of the program "from the beginning," although his participation in group counseling "was a little better." Kabbes testified that he was sometimes late, and sometimes did not pay attention during the sessions. She testified that she did not believe he took advantage of the opportunities afforded to him by the program.

¶ 10 Thereafter, the State rested its case, and the defendant testified on his own behalf. He testified about his relationship with his children prior to his admission to the program, and that when he lost the ability to visit his children during his time in the program, it "was devastating" to him. He also testified about his own upbringing, and that he wanted his children to have a better life because he was raised by "drug addicts" who "were never there for" him when he needed them. He asked to remain in the program because it was the best opportunity he had ever had to get and stay sober, and he believed that if he stayed in the program, he could do that. He testified that he had learned that he could not run away from problems, and needed to face his problems and be sober while doing so.

¶ 11 The parties then presentend their arguments. The State contended that it was clear that the Problem Solving Court devoted significant resources to helping the defendant, but that he did not take advantage of them, and that he instead broke multiple rules, multiple times. The State argued that the defendant did not "show up" for the program, and was not honest with those who were

trying to help him. The State recounted some of the defendant's violations, and argued that the defendant squandered the many opportunities and resources he was given, even after being given multiple opportunities to change his behavior and abide by the rules of the program.

¶ 12    Defense counsel argued that were it not for the trauma of losing access to his children, the defendant might have been successful in the program. He argued that although the defendant "wasn't perfect," he was behaving in a manner that was to be expected of a drug-addicted participant in the program, and that he was representative of why the program existed in the first place. He argued that the program was "all about giving people another chance," and that the defendant should be allowed to remain in the program.

¶ 13    The judge stated that she believed the defendant had the potential to complete the program, "but he was unable, at times unwilling, to participate in the treatment program as he should have." She added that "[f]or the majority of the time that he was in the program, he was not performing satisfactorily and engaged in conduct that would make him unsuitable for the program." She thereafter discharged the defendant from the program and set a status call on his three criminal cases for December 7, 2020. At the December 7, 2020, status call, a sentencing hearing was set for January 11, 2021.

¶ 14    On January 5, 2021, an 11-page presentence investigation report (PSI) was filed, along with approximately 35 pages of supporting documents, including detailed investigation reports from the Clay County Sheriff's Office related to the criminal offenses charged in cases 19-CF-60, 20-CF-37, and 20-CF-41. With regard to case No. 20-CF-41, which as described above charged one count of the Class 4 felony of violation of an order of protection, the relevant investigation reports stated that the person who was protected by the order (1) reported that the defendant had slashed her tires after they had an argument, (2) admitted that she was living with the defendant again, despite having the order against him, and (3) later stated that she obtained the order against

the defendant only because of "pressure" from the Illinois Department of Children and Family Services, which had taken custody of one of her children and had told her that she would not get the child back "as long as she was around" the defendant. The investigation reports further stated that the woman stated that she (1) did not feel threatened by the defendant, and that although they had "a lot of disagreements," those were "mainly verbal"; (2) had filed paperwork in Marion County to have the order of protection dropped, but the pandemic had prevented her from following up on her filing; and (3) did not wish to pursue charges against the defendant for violating the order. The investigation reports also indicated that the defendant was thereafter taken into custody, at which time he (1) denied slashing the tires, (2) stated that he loved the person protected by the order, (3) stated that she was voluntarily living with him, and (4) stated that "he had never been physically violent" with her.

¶ 15    The PSI listed each of the criminal offenses for which the defendant was to be sentenced in the above cases, as described at the outset of this order. The PSI then included a section entitled "Official Version of the Offense(s)," which stated that it was taken from "the State's Petition to Revoke Problem Solving Court," relisted the offenses summarily, then listed and described the 25 occasions on which the defendant allegedly violated the terms of the Problem Solving Court. Immediately thereafter, the PSI—apparently still copying from the State's petition to revoke— alleged that the defendant was not making adequate progress in the Problem Solving Court, and asked that participation be revoked and that the case proceed to a sentencing hearing. The PSI referenced the attached investigation reports, then provided demographic information about the defendant and his prior criminal history, as well as his prior substance abuse issues and other information generally found in a PSI.

¶ 16    On January 11, 2021, the defendant filed a motion for substitution of judge, in which he argued that the judge who set the sentencing hearing was not available "[f]or reasons unknown,"

and that the judge who instead was scheduled to sentence the defendant that day was "so prejudice[d] against him that he [could not] receive a fair sentencing hearing." The motion did not allege any particular facts about bias or prejudice on the part of the sentencing judge. At the outset of the hearing, the State objected to the motion on the basis that it was not permissible at such a late stage of the criminal proceedings against the defendant. The sentencing judge agreed with the position taken by the State, and further noted that he believed the motion was impermissible because he already had made a substantial ruling at the preliminary hearing in one of the criminal cases, prior to the defendant's participation in the diversion program, although he otherwise had extremely limited involvement in the cases until they appeared on his docket for sentencing that morning. Accordingly, he denied the motion for substitution of judge, a point which the defendant does not appeal.

¶ 17    The sentencing judge then asked the parties if they received copies of the PSI that was filed. Both counsel for the State and defense counsel indicated that they had received it and had no additions, deletions, or corrections to make to it. The State declined to present evidence in aggravation, noting that it would "rest[ ] on the [PSI] and just reserve[ ] time for argument." The defendant presented a statement in allocution in which he stated that he had a drug addiction problem and needed help. He asked for "any other sentence rather than prison." He stated that the life of a drug addict was not the life he wanted, but it was the life he had been taught. He stated that he wanted "to unlearn this way of life." He stated that he believed he was doing well in the program until he lost access to his children, which he stated "crushed" him. He stated that he believed that if that had not happened, he would still be in the program and would be progressing well. He doubted that he could get helpful treatment for his addiction in IDOC and again asked for a sentence other than to prison.

¶ 18    Thereafter, the State argued for a combined total sentence to IDOC of eight years for the three cases, to be followed by four years of mandatory supervised release (MSR). The State argued that, in aggravation, such a sentence was necessary because of the defendant's prior criminal history, which included six previous felonies. The State also set forth for the sentencing judge the problems that the defendant had while a participant in the Problem Solving Court program, and argued that if the defendant really wanted to be a part of his children's lives, he should have known he had to "stay out of trouble," and should have taken advantage of the benefits of being in the program. The State conceded that the defendant was now asking for help, but stated that the program "is the most help we can offer anybody," and the defendant failed to take advantage of it. The State argued that significant resources were devoted to the program, and that if individuals failed to take advantage of them, "there's nothing else we can do for them." The State noted the defendant's history of violating probation and committing crimes while on probation. As an additional factor in aggravation, the State argued that a sentence was necessary to deter others from committing the same crime, and also noted that the defendant had extensive misdemeanor convictions throughout his adult life, in addition to the aforementioned felony convictions. The State noted that because the defendant was extended-term eligible, he was "eligible for a sentence of up to 16 years" on the cases, and argued that, accordingly, the State's recommendation of 8 years was "a reasonable one in this case."

¶ 19    Defense counsel argued that the defendant is a drug addict, that drug addiction is an illness, and that accordingly, if a sentence to IDOC were to be imposed, he believed an appropriate sentence would be 30 months on the offense of unlawful possession of methamphetamine and 18 months on the other offenses. He argued that all of the offenses for which the defendant was being sentenced were not surprising in light of the defendant's addiction and his life and family history. He argued, in mitigation, that (1) the defendant's actions related to the offenses did not threaten or

9

cause any serious physical harm to anyone, and that the defendant did not contemplate that his actions would threaten or cause any serious physical harm to anyone, (2) the defendant's drug addiction could be seen as "strong provocation" in the sense that "drugs take control of his person," and (3) restitution potentially could be ordered, although no evidence had been presented by the State with regard to an appropriate amount of restitution in this case. He further argued that when the defendant's history was considered, "[t]he one thing" that had not been tried was residential treatment for his addiction, which he argued IDOC "does not have a good history" of providing. He argued that therefore an appropriate sentencing alternative would be "an extensive residential treatment program" that included keeping the defendant "in a locked-down status requiring him to go to these individual counseling sessions [and] group sessions."

¶ 20 The sentencing judge thereafter stated that he had considered the PSI, the arguments of counsel, the costs of incarceration, "the statutory presumption in favor of a term of probation unless certain factors are present," and the defendant's statement in allocution. He found, as factors in aggravation, "substantial criminal history and a sentence is necessary to deter." He stated that he "finds zero factors in mitigation," without offering an explanation for how he reached this conclusion. He then stated that he believed that defendant was not discharged from the program due to a relapse, but because the defendant "completely and totally blew it off" and "didn't even try." He added that he "finds consistently that addicts are among the most selfish people on earth." He noted all the resources devoted to helping the defendant in this case, and opined that in response, "in essence, they were given the middle finger." He stated that he found "two surprises" in the PSI, the first being the fact that the defendant, his prior criminal record notwithstanding, was given two years of probation for an unrelated 2018 case in Fayette County, and the second being the defendant's extensive prior criminal history itself. He stated that to place the defendant "back on probation would be an absolute joke," and that his challenge as he imposed sentence was

"whether to absolutely max him on everything, which he certainly deserves and on this record [would be] easily done." Immediately thereafter, he imposed a combined total sentence of 11 years for the three cases to which the defendant pleaded guilty, to be followed by a 1-year term of MSR.

¶ 21    The defendant thereafter filed a motion to reconsider sentence. A hearing on the motion was held on August 16, 2021. Defense counsel first argued that his motion for substitution of judge should have been granted. He then argued that the defendant's 11-year sentence was excessive, and that the 8-year sentence recommended by the State "would be appropriate" and "would be acceptable." The State argued that denying the motion for substitution of judge was not erroneous, and that, with regard to the sentence, there was no merit to the defendant's arguments related thereto. There was no discussion by the parties, or the sentencing judge, as to whether the sentencing judge properly considered all factors in aggravation and mitigation. Thereafter, the defendant's motion to reconsider was denied, and this timely appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, the defendant's sole contention is that the sentencing judge abused his discretion when he sentenced the defendant to a combined total of 11 years in IDOC following the revocation of his participation in the Problem Solving Court program, because that sentence was excessive. In support of this contention, the defendant argues that the sentencing judge erred because he (1) "made numerous statements that demonstrated an inability to separate [the defendant's] actions while on probation from the charges to which he pled guilty," (2) "was guided primarily—if not exclusively—by his personal beliefs and policies, and failed to remain impartial during the sentencing hearing," and (3) found "no factors in mitigation applied to [the defendant], despite the arguments to the contrary made by defense counsel and the numerous factors in mitigation that clearly apply." The defendant asks us to "vacate his sentence and remand his cause for a new sentencing hearing before a different judge."

11

¶ 24    With regard to his first point, the defendant notes the well-established principle of law that although, following the revocation of probation, a judge may consider the defendant's conduct during the probation period as evidence of the defendant's rehabilitative potential, a judge may not punish a defendant for the defendant's conduct during that time, and instead must base any postprobation sentence on the original crimes for which the defendant is being sentenced. He posits that, in this case, it is clear from the sentencing judge's statements on the record that he sentenced the defendant on the basis of the defendant's "actions while on probation, and not based on any relevant considerations of the original charges," because "far from discussing any relevant part of the charges involved in [the defendant's] guilty plea, [the sentencing judge] spent a full page in the transcript scolding [the defendant] for not complying with every detail of his probation." He argues that a number of the sentencing judge's statements "directly linked [the defendant's] unsuccessful discharge from Problem Solving Court to the sentence he received."

¶ 25    With regard to his second point, the defendant notes the sentencing judge's statement that he "finds consistently that addicts are among the most selfish people on earth," and posits that the statement is proof that the defendant, as a person with a substance abuse addiction, fell into the judge's "category of disfavored offenders," which is not permissible under Illinois precedent because it deprived the defendant of the individualized consideration he was entitled to when facing sentence. He adds that, "[i]f nothing else, [the sentencing judge's] statements make it clear that he gave [the defendant] a higher sentence because he does not like addicts," which also is not appropriate or permissible under the law.

¶ 26    With regard to his third point, the defendant notes that at the sentencing hearing, defense counsel argued both that the defendant's "conduct neither caused nor threatened any serious physical harm to anyone," and that the defendant "did not contemplate that his conduct would either cause[ ] or threaten serious physical harm," and that both of these arguments were supported

12

by the record. He notes other arguments in mitigation made by defense counsel, and argues that the sentencing judge, "without even mentioning these arguments, found that no factors in mitigation existed and based his sentencing decision on what appears to be his own personal feelings regarding drug addicts." He argues that the sentencing judge "was required to set those personal feelings aside and to render a judgement that was both fair and based upon the facts of the case at hand," but that a review of the record "clearly demonstrates that [the sentencing judge] did no such thing."

¶ 27 The State responds that because the defendant's 11-year sentence was within the sentencing range permissible by statute, and was not in fact the maximum sentence allowed, when the sentencing decision is viewed as a whole, the defendant's sentence was reasonable and appropriate, rather than excessive. The State posits that the sentencing judge "did not improperly consider the defendant's conduct while on probation," and that the defendant is unable to meet his burden to show that the judge "improperly utilized personal policy" when sentencing the defendant, or that the judge "did not consider the appropriate mitigating factors in sentencing the defendant." The State contends that the testimony from the hearing on the petition to revoke the defendant's participation in the Problem Solving Court program shows that the sentencing judge's statement that the defendant "completely and totally blew *** off" the program was justifiable, and that his comment about selfishness was strictly about the defendant's behavior with regard to the program, as was his comment about the defendant giving the program "the middle finger." The State posits that with regard to all of the comments with which the defendant takes issue, "the defendant fails to show that the sentence imposed after probation revocation was in fact a penalty for conduct that led to the revocation and not for the original offense." The State further argues that the sentencing judge's comment about " 'addicts' references the original charge of possession of methamphetamine, and the statement about 'addicts' being 'selfish' could refer to the fact that

13

the defendant was literally using someone else's credit and debit card for himself" as part of one of the crimes for which he was being sentenced. With regard to the factors in mitigation that were argued and presented by defense counsel at the sentencing hearing, the State argues "that the first two mitigating factors the defendant expressed, that his conduct did not cause or threaten any serious physical harm and he did not contemplate the aforementioned harm, can be rejected where there was evidence that the defendant violated an order of protection and slashed the subject of the order of protection's tires to prevent her escape," and that the sentencing judge "could have rejected the factor that 'the defendant has compensated or will compensate the victim[s] of his criminal conduct for the damage' where it had no clear applicability here." The State further argues that the sentencing judge "likely rejected the argument that drug addiction qualifies as a mitigating factor in provocation, because the defendant fails to provide any authority to establish how that factor in mitigation should have been accepted here, under the facts of the case." The State posits that because the sentencing judge explicitly stated that he "considered counsels' arguments, which included the defendant's asserted factors in mitigation," in this case "the defendant cannot demonstrate the [sentencing judge] failed to consider factors in mitigation."

¶ 28    In reply, the defendant reiterates his contention that the sentencing judge's "statements demonstrate an implicit bias against addicts, and [that the defendant's] sentence was inappropriately aggravated on that basis." In support of this contention, he argues that the sentencing judge "improperly commingled" the defendant's underlying offenses and his acts while on probation, and that "the State fails to explain in any way how [the sentencing judge's] statement that 'addicts are the most selfish people on earth' is in any way related to [the defendant's] rehabilitative potential," as required. The defendant further contends that throughout its brief, the State concedes that the sentencing judge allowed his personal opinions and personal policies to factor into his sentencing of the defendant. He reiterates that "at no point in [the sentencing

judge's] three paragraphs of commentary, does he once refer to the conduct leading up to the offenses for which [the defendant] pled guilty, and instead focuses entirely on the conduct that led to his probation being revoked." He argues that, as a result, this court "may reasonably infer" that the defendant was sentenced for his conduct while on probation, rather than for the underlying offenses. The defendant also reiterates his argument that the defendant, as a person with a substance abuse addiction, fell into the judge's "category of disfavored offenders," which is not permissible under Illinois precedent because it deprived the defendant of the individualized consideration he was entitled to when facing sentence. He emphasizes that the State implies in its brief that such bias may be shown only through explicit statements of a sentencing judge, which the defendant suggests is not the appropriate standard for juding such claims, because no sentencing judge is likely to explicitly state that he is considering inappropriate factors when determining a defendant's sentence. The defendant further argues that the State has not adequately rebutted his points with regard to whether the sentencing judge adequately considered factors in mitigation as he fashioned the defendant's sentence.

¶ 29    We begin our analysis of the defendant's excessive sentencing argument by noting that because a sentence that is outside of the statutory sentencing range is void, not excessive, the phrase "excessive sentence" has been construed to mean something different: "a sentence *within* the statutory range but without regard for a particular defendant's rehabilitative potential." (Emphasis added.) *People v. Daly*, 2014 IL App (4th) 140624, ¶ 25. "The Illinois Constitution provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id.* ¶ 26. Thus, a sentencing judge must balance "the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id.* To be reasonable, the resulting "sentence must be based on the particular circumstances of [the] case." *Id.* A reviewing

court recognizes that the sentencing judge has the "opportunity to assess a defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age," and accordingly must afford deference to the sentencing judgment. *Id.* Nevertheless, "the appellate court was never meant to be a rubber stamp for the sentencing decisions of trial courts," and we may disturb a sentence that is within the statutory range if we conclude that the sentencing judge committed an abuse of discretion in imposing the sentence. *Id.* If we conclude that there has been an abuse of discretion, we are authorized by the rules of the Illinois Supreme Court to reduce a defendant's sentence. *Id.* ¶ 40. If we determine that remand for a new sentencing hearing is a more appropriate remedy, we are permitted to order that the matter be assigned to a different judge on remand. *Id.* "However, reliance on an improper factor does not always necessitate remandment for resentencing," and, for example, no remand is necessary "when it can be determined from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence." *People v. Miller*, 2014 IL App (2d) 120873, ¶ 37.

¶ 30    "In fashioning the appropriate sentence, the most important factor to consider is the seriousness of the crime." *People v. Busse*, 2016 IL App (1st) 142941, ¶ 28. The sentencing judge is required to consider all factors in aggravation and mitigation, and we will presume the sentencing judge has done so unless there is "affirmative evidence" of the failure to do so. *Id.* ¶ 22. "There is no requirement that the [sentencing judge] must set forth every reason or specify the weight [given] to each factor when determining the sentence." *Id.* ¶ 24. Nevertheless, in keeping with the requirement that, to be appropriate, a sentence must be based on the particular facts and circumstances of the case, a sentencing judge cannot compare one criminal case to another unless all of the facts in the two cases are deemed to be " 'substantially identical,' which 'will rarely, if ever, occur.' " *Daly*, 2014 IL App (4th) 140624, ¶ 35 (quoting *People v. Bien*, 277 Ill. App. 3d 744, 755 (1996)). Likewise, a judge may not employ a personal policy in sentencing, such as

16

refusing to consider sentencing alternatives for certain offenders, or always imposing particularly harsh sentences on a "category of disfavored offenders." *Id.* ¶ 36. In the same vein, a sentencing judge commits an abuse of discretion if the judge "fashions a sentence based on *** personal beliefs or arbitrary reasons." *Miller*, 2014 IL App (2d) 120873, ¶ 36. Furthermore, it is axiomatic that although a sentencing judge may consider a defendant's conduct while that defendant was on probation as evidence of the defendant's rehabilitative potential, the judge may not punish a defendant for the conduct that gave rise to a probation violation, but instead must fashion the sentence based upon the original offense. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). "If the conduct while on probation constitutes a separate offense, the defendant should be tried and found guilty, and the sentence should conform to 'orderly criminal processes.' " *Id.* (quoting *People v. Koppen*, 29 Ill. App. 3d 29, 32 (1975)).

¶ 31    In addition to the foregoing, we note that with regard to the specific issue of the proper consideration of factors in mitigation, this court previously has held that when it is clear from the record that the statutory factors in mitigation exist that (1) the defendant's actions related to the offense or offenses for which the defendant is being sentenced did not threaten or cause any serious physical harm to another person and (2) the defendant did not contemplate that the defendant's actions would threaten or cause any serious physical harm to another person, a sentencing judge errs if the judge finds no applicable factors in mitigation. *People v. Cooper*, 146 Ill. App. 3d 596, 602-03 (1986). When such an error occurs, if this court "cannot determine what, if any, effect" the error had on the subsequently-delivered sentence, we will vacate the defendant's sentence and remand for resentencing. *Id.* at 603.

¶ 32    In this case, the defendant is correct in his assertion that at no time during the sentencing hearing did the sentencing judge discuss the underlying offenses for which the defendant was being sentenced; instead, the sentencing judge focused entirely on the defendant's conduct while on

17

probation. However, as described above, the sentencing judge did state, on the record, that he had considered the PSI, which, as also described above, included detailed investigative reports from the Clay County Sheriff's Office related to the offenses for which the defendant was being sentenced, and from which the sentencing judge could have obtained all the information necessary to appropriately sentence the defendant for the underlying offenses, notwithstanding his failure to specifically discuss those offenses at the sentencing hearing. Unfortunately, however, it is clear from the record that the sentencing judge did not adequately consider the information available to him when he concluded that there were "zero factors in mitigation" present in this case.

¶ 33    With regard to case No. 20-CF-41, which as described above charged one count of the Class 4 felony of violation of an order of protection, the relevant investigation reports stated that the person who was protected by the order (1) reported that the defendant had slashed her tires after they had an argument, (2) admitted that she was living with the defendant again, despite having the order against him, and (3) later stated that she obtained the order against the defendant only because of "pressure" from the Illinois Department of Children and Family Services, which had taken custody of one of her children and had told her that she would not get the child back "as long as she was around" the defendant. The investigation reports further stated that the woman stated that she (1) did not feel threatened by the defendant, and that although they had "a lot of disagreements," those were "mainly verbal"; (2) had filed paperwork in Marion County to have the order of protection dropped, but the pandemic had prevented her from following up on her filing; and (3) did not wish to pursue charges against the defendant for violating the order. The investigation reports also indicated that the defendant was thereafter taken into custody, at which time he (1) denied slashing the tires, (2) stated that he loved the person protected by the order, (3) stated that she was voluntarily living with him, and (4) stated that "he had never been physically violent" with her.

¶ 34 On the basis of this information, we reject the State's contention that the defendant's mitigation argument should be "rejected where there was evidence that the defendant violated an order of protection and slashed the subject of the order of protection's tires to prevent her escape." Although the defendant certainly stipulated to slashing the victim's tires when he pleaded guilty, there is simply no evidence to support the idea that the defendant contemplated that slashing the victim's tires would threaten or cause serious physical harm to her or any other person. Likewise, there is no evidence that his actions did in fact threaten or cause serious physical harm to her or any other person. To the contrary, the absence of information about actual, threatened, or contemplated serious physical harm in the investigation reports—and in the proceedings that followed—leads to the reasonable inference that no serious physical harm to the victim or anyone else occurred, was threatened, or was contemplated by the defendant in this case.

¶ 35 Moreover, the State has provided no other evidence or argument in support of the notion that the defendant's actions related to *any* of the offenses for which he was being sentenced— which we reiterate were (1) one count of unlawful possession of less than five grams of methamphetamine, (2) two counts of possession of a lost or mislaid credit or debit card, and (3) the aforementioned one count of violation of an order of protection—threatened or caused serious physical harm to another person, or that the defendant contemplated that his actions would threaten or cause any serious physical harm to another person, and we are aware of no evidence or argument in support of such a notion.

¶ 36 Thus, in this case there is "affirmative evidence" in the record that the sentencing judge erred when he found "zero factors in mitigation." See *Busse*, 2016 IL App (1st) 142941, ¶ 22; see also *Cooper*, 146 Ill. App. 3d at 602-03. Because we "cannot determine what, if any, effect" the sentencing judge's error had on the subsequently-delivered sentence, we vacate the defendant's sentence and remand for resentencing. *Cooper*, 146 Ill. App. 3d at 603. Likewise, because we

19

cannot conclude, on the record before us, that the sentencing judge's error "was so insignificant that it did not lead to a greater sentence" (see *Miller*, 2014 IL App (2d) 120873, ¶ 37), we vacate the defendant's sentence and remand for a new sentencing hearing on that basis as well. We note that this is particularly true where, as here, the sentence that was handed down exceeded the State's recommended sentence by a full three years. Although we need not decide the merits of the defendant's other arguments on appeal, and decline to do so, we note that we share the defendant's concerns about some of the sentencing judge's comments, which added nothing of value to the sentencing proceedings and easily could be construed in the prejudicial manner suggested by the defendant. Thus, we deem it appropriate to order that a different judge preside over the resentencing of the defendant on remand. See *Daly*, 2014 IL App (4th) 140624, ¶ 40.

¶ 37                                III. CONCLUSION

¶ 38    For the foregoing reasons, we vacate the defendant's sentence and remand for a new sentencing hearing before a different judge.


¶ 39    Sentence vacated; cause remanded for new sentencing hearing before different judge.